UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO GUYTON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF STOCKTON, STOCKTON POLICE DEPARTMANT, VINCENT MAGANA, COURTLYN CHAPPELL,<br><br>Defendants. | No. 2:24-cv-0922 DC AC PS<br><br><br><u>ORDER</u> and<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). Before the court is a motion to dismiss filed by all defendants on December 3, 2024. ECF No. 13 (memorandum filed at ECF No. 14). Plaintiff opposed the motion, ECF No. 17, and defendants submitted a reply brief, ECF No. 19. The parties appeared before the undersigned for oral argument on February 5, 2025, with plaintiff appearing on behalf of himself and counsel appearing on behalf of defendants. ECF No. 22. For the reasons that follow, the undersigned recommends defendants' motion to dismiss (ECF No. 13) be GRANTED, but that plaintiff be given leave to file a Third Amended Complaint as to all claims except those arising under the First and Fifth Amendments, which should be dismissed without leave to amend.

////

Plaintiff also filed a motion to compel discovery and for sanctions. ECF No. 20. That motion will be DENIED without prejudice as premature.

**I. Background**

A.    Procedural History

Plaintiff commenced this case with the filing of a letter on March 25, 2024, along with an application to proceed in forma pauperis ("IFP"). ECF Nos. 1, 2. On May 30, 2024, the undersigned granted plaintiff's request to proceed IFP and ordered him to file an amended complaint. ECF No. 3. Plaintiff filed his first amended complaint for violation of civil rights on June 25, 2024. ECF No. 4. The court found the first amended complaint adequate for service. ECF No. 5.

Defendants represent that in early November 2024, counsel for the City of Stockton, Stockton Police Department, Vincent Magana, and Courtlyn Chappell called plaintiff and spoke with him. ECF No. 14 at 6. "Defense counsel identified himself and explained that he was representing the named Defendants in Plaintiff's First-Amended Complaint and that Plaintiff's First-Amended Complaint was insufficient as a matter of federal law. Plaintiff agreed to file a Second-Amended Complaint." Id. Plaintiff filed the operative second amended complaint ("SAC") on November 8, 2024. ECF No. 12.

B.    Second Amended Complaint

Plaintiff sues defendants for various violations of the Fourth Amendment, racial profiling, excessive use of force, unlawful search and seizure, violations of due process, violations of the First Amendment, and failure to follow proper procedures. ECF No. 12 at 1. He alleges in conclusory terms that on March 24, 2022 and June 8, 2022 defendants targeted him for traffic stops based on his race and ethnicity. Id. at 2. The stops were pretextual, lacking any reasonable suspicion of criminal activity. Id. During these stops, defendants "made derogatory comments and engaged in other discriminatory behavior" such as insulting plaintiff and insinuating that he was involved in other criminal activity or had a "dirty lifestyle." Id.

Plaintiff alleges that during the March 24 stop, defendants used excessive force by forcibly removing plaintiff from his vehicle and placing him in handcuffs, despite his compliance.

Id. The officers' "aggressive approach, including attempting to force open the locked back door of the plaintiff's car, forcibly pulling him out, and confiscating" his phone was, plaintiff alleges, excessive under the circumstances. During the June 8 stop, defendants again used excessive force by unlawfully searching his vehicle and making derogatory comments about plaintiff's belongings. Id. at 2. Both of these searches were conducted without probable cause or a warrant. Plaintiff was detained without probable cause and subjected to unnecessary questioning. Id. at 2-3. Plaintiff alleges that the June 8 interaction involved an unlawful arrest. Id. at 2. Plaintiff alleges that during the March 24 stop he attempted to record the interaction with his phone, but defendant officers confiscated his phone, hindering his ability to document the incident. Id.

Plaintiff alleges municipal liability exists because the City of Stockton failed to train its officers, failed to adequately supervise its officers, and failed to take appropriate disciplinary actions against repeat offenses by its officers. Id. at 4.

C. Motion to Dismiss

Defendants move to dismiss this case on the grounds that plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 14 at 6-7.

**II. Analysis**

A. Applicable Legal Standards

    1. Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally

cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

    2. Constitutional Claims Under § 1983

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by a person acting "under

color of any statute, ordinance, regulation, custom, or usage." Gomez v. Toledo, 446 U.S. 635, 639 (1980). To succeed in asserting a claim under § 1983, a plaintiff must allege that an action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. Leer v. Murphy, 844 F.2d 628, 632–33 (9th Cir.1988) (citations omitted). Here, all of plaintiff's claims of constitutional violations are brought pursuant to §1983.

B. Preliminary Considerations

The second amended complaint includes separate lists of largely conclusory factual allegations and of legal claims identified by type. ECF No. 12 at 2-3. It is not organized in a way that clearly identifies what acts of which defendants are intended to demonstrate which constitutional violations. See ECF No. 12. Accordingly, the complaint fails to present a "short and plain" statement setting forth the basis for plaintiff's entitlement to relief as required by Fed. R. Civ. P. 8(a). Without more detailed factual allegations—including, for example, exactly what each individual defendant did on March 24, 2022 and on June 8, 2022 respectively—it is impossible for the court to meaningfully conduct the analysis required under Rule 12(b)(6).

Moreover, because the complaint does not clearly specify which named defendant committed what specific acts, it is impossible to determine whether and how each defendant personally participated in the deprivation of plaintiff's rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). If plaintiff is granted leave to amend and chooses to amend the complaint, he must clearly state which defendant is responsible in what way for each alleged violation.

The court will proceed to discuss the factual deficiencies of plaintiff's individual claims. Should the district judge adopt the recommendation that plaintiff be given a final opportunity to amend, plaintiff is advised that a third amended complaint should be organized on a claim-by-claim basis, specifying as to each claim which defendants are alleged to be liable and precisely what each of them did to violate the constitutional right at issue. Further information about

amendment is provided below in the final section of these Findings and Recommendations.

### C. Unlawful Arrest in Violation of the Fourth Amendment

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Lacey v. Maricopa County, 693 F.3d 896, 918 (9th Cir. 2012) (en banc) (citation and internal quotation marks omitted); Maxwell v. County of San Diego, 708 F.3d 1075, 1085 (9th Cir. 2013) (an arrest "without probable cause" is "an unreasonable seizure"). An arrest is supported by probable cause if, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002), quoting United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). Objective facts and circumstances known to the officer at the time of the arrest determine its validity. Beck v. State of Ohio, 379 U.S. 89, 95 (1964). The existence of probable cause defeats a claim for false arrest. Hart v. Parks, 450 F.3d 1059, 1069 (9th Cir. 2006).

Defendants present two primary arguments: (1) that plaintiff's claim is conclusory, and (2) that the allegations of SAC do not demonstrate that plaintiff was actually arrested, which defeats a claim for false arrest. The court agrees on both counts. "A brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a Terry stop and does not necessarily convert the stop into an arrest." United States v. Bautista, 684 F.2d 1286, 1289 (9th Cir. 1982). Handcuffing also does not necessarily convert an investigative detention into an arrest. See Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996). Whether a stop becomes an arrest depends on the totality of the circumstances, of which handcuffing or other use of force is only one. Id.

Because the SAC does not specify the circumstances of the stop or provide any details about the ensuing detention and its context, it does not present facts which taken as true would establish that plaintiff was arrested and that the arrest lacked probable cause. Accordingly, the SAC fails to state an unlawful arrest claim on which relief may be granted. Because plaintiff may

////

be able to cure the pleading defect by the addition of further facts, leave to amend is recommended.

### D. Unreasonable Search and Seizure in Violation of the Fourth Amendment

Plaintiff alleges in conclusory fashion that he was subjected to unconstitutional searches and seizures on March 24, 2022, and June 8, 2022, but the SAC lacks factual detail regarding the scope of any search and the nature of any seizure, let alone the surrounding circumstances. See ECF No. 12. It is unclear whether plaintiff's person was searched, whether his car was searched, and whether his vehicle was impounded. It is entirely unclear who did what, on which date.

The Fourth Amendment prohibits "unreasonable searches and seizures." Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir.1995). Not all searches and seizures are prohibited under the Fourth Amendment, only those that are "unreasonable." Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994). Unreasonableness is measured by an objective test based on all of the circumstances present in a given situation. Id. at 876-76. Objective reasonableness is evaluated from the perspective of a "reasonable officer on the scene," in light of all the facts and circumstances confronting law enforcement. Torres v. City of Madera, 648 F.3d 1119, 1124 (9th Cir. 2011).

Defendants are correct that the SAC does not contain enough information for this claim to survive dismissal. For the SAC to withstand a Fed. R. Civ. P. 12(b)(6) motion, plaintiff needs to allege enough facts for the court and for the defendants to understand exactly what happened on which date and why any search or seizure could be considered "unreasonable" under the circumstances. Plaintiff must explain what actions were taken, by who, and what circumstances make those actions "unreasonable." Because the SAC alleges insufficient facts, this claim must be dismissed but leave to amend should be permitted.

### E. Excessive Force in Violation of the Fourth Amendment

The Fourth Amendment requires law enforcement officers to limit the amount of force used to that which is objectively reasonable in light of the circumstances. Tennessee v. Garner, 471 U.S. 1, 7–8 (1985); Graham v. Connor, 490 U.S. 386, 396 (1989). Under this standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and

7

circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397.  Central to "Graham's objective-reasonableness test is the clear principle that the force used to make an arrest must be balanced against the need for force: it is the need for force which is at the heart of the Graham factors." Velazquez v. City of Long Beach, 793 F.3d 1010, 1025 (9th Cir. 2015).  To determine whether a particular use of force was unreasonable, a court is to consider: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." Williamson v. City of National City, 23 F.4th 1146, 1151 (9th Cir. 2022) (citing Graham, 490 U.S. at 397).

      Here, plaintiff makes allegations that are not sufficient to withstand a motion to dismiss. He alleges that on March 24, 2022, defendants "used excessive force by forcibly removing Plaintiff from his vehicle and placing him in handcuffs, despite his compliance[,]" and that on June 8, 2022, "Defendants again used excessive force by unlawfully searching Plaintiff's vehicle and making derogatory comments about his belongings." ECF No. 12 at 2.  The latter allegations do not identify any use of force, let alone one that is unreasonable.  Elsewhere in the SAC plaintiff alleges that the officers took an "aggressive approach, including attempting to force open the locked back door of the plaintiff's car, forcibly pulling him out, and confiscating plaintiff's phone[.]" Id. at 5.  It is unclear when this happened.  None of these allegations specify whether it was Officer Chappell or Officer Magana (or both) who presumably laid hands on plaintiff, and the SAC does not specify the nature and degree of force used to remove plaintiff from his vehicle or the circumstances which would inform the reasonableness of that force.  Without more detailed allegations, it cannot be determined whether plaintiff can state a claim for excessive force in violation of the Fourth Amendment.  Accordingly, this claim must be dismissed but leave to amend should be permitted.

      F.   Retaliation in Violation of the First Amendment

      "[T]he First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." Houston Cmty. Coll.

8

Sys. v. Wilson, 595 U.S. 468, 474 (2022) (quoting Nieves v. Bartlett, 587 U.S. 391, 398 (2019)). "To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." Capp v. County of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (internal quotations omitted).

Plaintiff alleges that he was attempting to record his interaction with the officer defendants during the March 24th incident, and his phone was confiscated, impeding his freedom of speech and expression. ECF No. 12 at 5. The constitutional right of observers to record police activity in a public place has long been established in the Ninth Circuit. Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995) (arrest of videographer for recording police at protest violates First Amendment); Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1044 (9th Cir. 2018) (First Amendment bars blanket prohibition on observers recording Border Patrol activities). However, the established law regarding the right to record police interactions neither establishes nor implies any right of an individual to record *while detained*. See Alston v. City of Sacramento, No. 2:21-cv-2049-DAD-AC, 2023 U.S. Dist. LEXIS 182975 at 32-34, 2023 WL 6626174 at *10 (E.D. Cal. Oct. 11, 2023), report and recommendation adopted, No. 2:21-cv-02049-DAD-AC, 2024 WL 733260 (E.D. Cal. Feb. 22, 2024). To the contrary, the Ninth Circuit cases recognizing a right to film police activity have all involved filming by journalists, bystanders, and advocates. See id. (discussing cases). Other court have expressly held that there is not a clearly established right for a person to videotape police while they are pulled over on a traffic stop, because traffic stops have been characterized as an "inherently dangerous situation." Kelly v. Borough of Carlisle, 622 F.3d 248, 262 (3rd Cir. 2010).

The Constitution permits reasonable time, place and manner restrictions on otherwise protected First Amendment activity. See Askins, 899 F.3d at 1044; see also Glick v. Cunniffe, 655 F.3d 78, 85 (1st Cir. 2011) (the right to record police activity is "not unqualified"). The confiscation of a phone from a person being detained appears on its face to come within the scope of permissible time, place and manner restrictions on the recording of police. Kelly, 622 F.3d at

262. In any event, it is clear from plaintiff's allegations that the confiscation of his phone was secondary to his detention, and that he was not detained *because* he was recording police activity as in Fordyce and similar cases. A retaliatory motive is therefore lacking.

For all these reasons, plaintiff's allegations fail to establish a violation of his First Amendment rights. The gravamen of the claim is sufficiently clear to support a conclusion that amendment would not cure the deficiency. Because this claim fails as a matter of law, it should be dismissed without further leave to amend.

G. Racial Profiling in Violation of Equal Protection Rights

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff's only allegation with respect to his equal protection claim is that "Defendants targeted Plaintiff for traffic stops based on his race and ethnicity" and that the "stops were pretextual." ECF No. 12 at 2.

The conclusory assertion that defendants targeted plaintiff based on his race, without more, fails to state an equal protection claim. This claim should be dismissed with leave to amend. On amendment plaintiff should provide all facts demonstrating that each of the stops was motivated by plaintiff's race.

H. Denial of Due Process in Violation of the Fourteenth Amendment

Although the SAC references a Fourteenth Amendment Due Process claim, ECF No. 12 at 3, the court cannot identify the factual basis for such a claim. To the extent that due process is invoked on the basis that "the officers detained the plaintiff without a valid reason and failed to provide a valid reasons for the detention[,]" id. at 5, the applicable constitutional provision is the Fourth Amendment and not the Due Process Clause.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." United States v. Guillen-Cervantes, 748 F.3d 870, 872 (9th Cir. 2014). Restrictions of liberty and seizures of property attendant to law enforcement activity are governed exclusively by the Fourth Amendment standards discussed previously. See Graham v. Connor, 490 U.S. 386, 395 (1989) (where the Fourth Amendment provides an explicit textual source of constitutional protection, that amendment and not generalized concepts of due process govern).

The SAC contains no identifiable factual basis for a Fourteenth Amendment due process claim. If plaintiff files a third amended complaint, he should be permitted to amend this claim but should do so only if he has a factual basis for it that is distinct from his Fourth Amendment claims.

### I. Denial of Due Process in Violation of the Fifth Amendment

Plaintiff's list of constitutional violations also includes the deprivation of liberty without due process of law in violation of the Fifth Amendment. ECF No. 12 at 3. The factual basis for this claim is not clear. To the extent that plaintiff is proffering an alternative constitutional theory for the illegality of his detentions on March 24 and June 8, 2022, the Fourth Amendment exclusively governs such claims. Graham, 490 U.S. at 395. Regardless of its factual basis, however, this claim fails as a matter of law because the Fifth Amendment applies "only to actions of the federal government." Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); see also Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). Defendants in this case are not federal government actors, and the Fifth Amendment therefore does not apply to their conduct. This claim cannot be cured by amendment.

### J. Municipal Liability

The SAC expressly states a claim for municipal liability against the City of Stockton, as follows:

////

11

> Plaintiff alleges that the City of Stockton is liable for the constitutional violations committed by its officer under the doctrine of respondeat superior. The City, through its policies, practices, customs, and deliberate indifference, has created a culture that permits and encourages such misconduct.
>
> Specifically, Plaintiff alleges thar the City of Stockton:
>
> - Failed to adequately train its officer: the City's training programs were deficient in addressing issues of racial profiling, excessive force, and constitutional rights.
>
> - Failed to adequately supervise its officers: the City's supervisory structure was ineffective in preventing and addressing officer misconduct.
>
> - Failed to take appropriate disciplinary action against repeat offenders: Despite knowledge of Officer Magana's history of misconduct, the City failed to take meaningful disciplinary action, allowing the officer to continue to violate the rights of citizens.

ECF No. 12 at 4.

It is well-established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 692 (1978). To state a Monell claim against a municipality, plaintiff must allege facts demonstrating "that an 'official policy, custom, or pattern' on the part of [the municipality] was 'the actionable cause of the claimed injury.'" Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008)). The Ninth Circuit has recognized four theories for establishing municipal liability under Monell: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." Horton by Horton v. City of Santa Maria, 915 F.3d 592, 602–03 (9th Cir. 2019).

While the SAC identifies cognizable theories for municipal liability, it does not contain facts that state a claim under any of those theories. The "formulaic recitation of the elements of a cause of action" does not state a claim absent specific factual allegations sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. To state a § 1983 claim based on a failure to properly train, plaintiff must plead facts showing: (1) that he was deprived of

12

a constitutional right, (2) that the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons" with whom its police officers are likely to come into contact; and (3) that plaintiff's constitutional injury would have been avoided had the municipality properly trained those officers. Young v. City of Visalia, 687 F.Supp.2d 1141, 1148 (E.D. Cal. 2009) (quoting Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)). Plaintiff must allege facts demonstrating that the municipality "disregarded the known or obvious consequence that a particular omission in their training program would cause employees to violate citizen's constitutional rights." Connick v. Thompson, 563 U.S. 51, 61 (2011). This generally requires a pattern of similar constitutional violations. Flores v. County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014). Here, the SAC does not contain specific factual allegations about the City's training or supervision policies and practices related to "racial profiling, excessive force, and constitutional rights." It does not identify the deficiencies of such training or supervision, the circumstances making those deficiencies and their likely consequences obvious to the City, or how those deficiencies caused the alleged violations of plaintiff's rights. In the absence of such facts, plaintiff fails to state a claim.

"Unlike a failure to train claim, the Ninth Circuit has accepted that the actions of a single officer might be enough to support a failure to discipline claim." Hayes v. Riley, 525 F. Supp. 3d 1118, 1120–21 (N.D. Cal. 2020) (internal citations omitted). "If the same officer repeatedly violates the constitutional rights of a city's residents, and the city is on notice of these violations and fails to properly discipline the officer, by definition the city is deliberately indifferent to the likelihood that the officer will continue to commit constitutional violations in the future." Id. at 1121. Plaintiff's allegations regarding failure to discipline Officer Magana are insufficient because the SAC does not identify prior constitutional violations committed by the officer, facts demonstrating notice to the City of a pattern of misconduct by the officer, and the investigative and/or disciplinary responses alleged to have been inadequate.

Because this claim fails for lack of sufficiently detailed factual allegations, plaintiff should be provided leave to amend.

////

13

    K.  <u>Available Damages</u>

The court declines to reach defendants' argument as to damages. Because the undersigned is recommending dismissal with leave to amend, an assessment of available remedies is premature.

### III.    Leave to Amend

For the reasons explained above, plaintiff should be granted leave to amend as to all claims except for those asserted under the First and Fifth Amendments. Accordingly, the undersigned recommends that the motion to dismiss be granted, and that plaintiff be granted leave to amend his claims under the Fourth and Fourteenth Amendments and his municipal liability claim only.

### IV.    Motion for Discovery Sanctions

Plaintiff filed a motion to compel discovery and for sanctions on December 30, 2024. ECF No. 20. As discussed at oral argument on defendants' motion to dismiss, this case remains at the pleading stage, and formal discovery has not yet commenced. Accordingly, the undersigned denies this motion without prejudice as premature.

### V.    Pro Se Plaintiff's Summary

The Magistrate Judge is recommending that defendants' motion to dismiss be granted, but that you be allowed to file a Third Amended Complaint that includes all claims you wish to raise *except* for your Fifth Amendment claim and your First Amendment claim. The problems with your First and Fifth Amendment claims cannot be fixed by adding more facts. You will have 21 days to file objections to these recommendations if you wish to do so. Then, the District Judge will decide whether or not to adopt the recommendations. If the recommendations are adopted, you will have 30 days from the District Judge's order to file your Third Amended Complaint.

In drafting a Third Amended Complaint, remember that where the Fourth Amendment applies—false arrest, unreasonable searches and seizures, and excessive force—you do not need (and cannot pursue) a due process claim based on the same facts.

A Third Amended Complaint should be organized on a claim-by-claim basis, with all the facts related to each claim set forth under that claim's heading. Do not rely on legal conclusions

like force being "excessive" or a search "unreasonable." Instead, provide the facts that show why you think the constitutional standard was violated. Describe what each defendant did to violate your rights. Describe the circumstances of the stops and detentions and the officer's actions with sufficient detail that the court can tell what actually happened on each date and who did what.

On your equal protection claim, provide the facts and circumstances that show you were racially profiled or discriminated against based on your race. On your municipal liability claim, you should specify what the City's training practices and "supervisory structures" are, how they are deficient, and how they led to your rights being violated. If you want to pursue the claim that failure to discipline Officer Magana led to your rights being violated, provide details about the previous incidents that put the City on notice that he was committing misconduct and what the City did or did not do about it. In general as to all claims, your complaint must state *facts* which, if proved, would be enough to show violations of your constitutional rights.

An amended complaint must be complete unto itself. It must name all defendants you wish to sue and contain all your claims and factual allegations against each of them. Once an amended complaint is filed, it will become the operative complaint and the court will not refer to any prior complaints.

Your discovery motion is being denied because it was filed too early. A litigation schedule will be set once the pleadings are closed.

### VI. Conclusion

For the reasons explained above, it is hereby ORDERED that plaintiff's motion to compel discovery (ECF No. 20) is DENIED without prejudice as premature.

Further, the undersigned recommends that defendants' motion to dismiss (ECF No. 13) be GRANTED and that the Second Amended Complaint (ECF No. 12) be DISMISSED, with leave to amend as to all claims except for those brought under the First and Fifth Amendments.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a

document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: February 19, 2025

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE