UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO GUYTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF STOCKTON, et al.,<br><br>　　　　Defendants. | No.  2:24-cv-0922 DC AC PS<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  Plaintiff was given permission to proceed in forma pauperis on May 31, 2024, and his initial complaint was rejected for service pursuant to the screening process that accompanies IFP status.  ECF No. 3.  Plaintiff was granted leave to file a First Amended Complaint, which he filed on June 25, 2024.  ECF No. 4.  The undersigned found the First Amended Complaint sufficient for service.  Following an out-of-court conversation with defense counsel about the First Amended Complaint's deficiencies, plaintiff voluntarily filed a Second Amended Complaint on November 8, 2024, to clarify his claims.  ECF No. 12.

　　　　Defendants moved to dismiss the Second Amended Complaint.  ECF No. 13.  The undersigned issued Findings and Recommendations suggesting that the motion to dismiss be granted, but that plaintiff be given leave to file a Third Amended Complaint as to all claims

1

except those arising under the First and Fifth Amendments, which should be dismissed without leave to amend. ECF No. 23. Plaintiff objected. ECF No. 24. District Judge Dena M. Coggins adopted the Findings and Recommendations in part, but ordered that plaintiff be granted leave to amend as to his First Amendment claims. ECF No. 25. Plaintiff filed a Third Amended Complaint on October 14, 2025. ECF No. 26.

Defendants again move to dismiss. ECF No. 27. Plaintiff opposes the motion. ECF No. 29, 32. The undersigned recommends the motion to dismiss be GRANTED.

## I. Background

The operative complaint before the court is plaintiff's Third Amended Complaint, which alleges as follows. ECF No. 26. On March 24, 2022, plaintiff was lawfully operating his vehicle when he was "stopped by Officers Magana and Chappell without reasonable suspicion or probable cause." ECF No. 26 at 3. The officers were traveling in the opposite direction when they turned around and began following plaintiff. Id. Officer Magana approached plaintiff's vehicle and attempted to open the locked back door, then demanded the back windows be rolled down. Id. at 4. Plaintiff, concerned by the aggressive conduct, requested a supervisor and reached for his phone to record the interaction. Id. Officer Magana responded by reaching into the vehicle, twisting plaintiff's arm, forcibly removing plaintiff, and applying excessively tight handcuffs that caused bruising, pain, and restricted circulation. Id. As a result of this incident, plaintiff experienced physical and emotional trauma. Id. Plaintiff was subsequently required to appear in Stockton Traffic Court. Id. Plaintiff was ordered to do community service, which he completed under protest in order to have the citation cleared. Id. at 4-5.

On June 8, 2022, plaintiff was again stopped by Officer Chappel and another officer after making a lawful turn. Id. at 5. Again, the officers were traveling in the opposite direction and made a U-turn to follow plaintiff. Id. During the encounter one of the officers was recorded stating, "Your car is dirty – how can people live like this?" Id. At the conclusion of the stop, Officer Chappel remarked, "I know those guys – lets get those guys too," which plaintiff asserts reflects racial bias and an intent to target African Americans. Id. The citation issued as a result of this traffic stop was dismissed by the traffic court, which ruled that the offices lacked probable

cause for the stop. Id.

Plaintiff brings five causes of action. First, plaintiff sues defendant Magana and Chappel for unlawful seizure and excessive use of force in violation of the Fourth Amendment. Id. at 7. Second, plaintiff sues defendants for retaliation in violation of the First Amendment for using force and issuing a citation when plaintiff engaged in protected activity by protesting the officers' conduct, by requesting a supervisor, and by attempting to record police conduct. Id. Third, plaintiff sues defendants for violation of the Fourteenth Amendment's equal protection clause by treating him differently based on his race. Id. Fourth, plaintiff sues defendants for violation of the Fourteenth Amendment's due process clause by knowingly issuing false citations to justify illegal stops and detentions. Id. Fifth and finally, plaintiff sues the City of Stockton, alleging it "maintained policies, customs, and practices that permitted constitutional violations to occur and failed to properly supervise and train officers." Id. at 8.

## II. Motion to Dismiss

Defendants move to dismiss this case in its entirety, asserting that plaintiff's Third Amended Complaint does not state a claim upon which relief can be granted. ECF No. 27-1. "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

1  (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads
2  factual content that allows the court to draw the reasonable inference that the defendant is liable
3  for the misconduct alleged." Id.
4      In reviewing a complaint under this standard, the court "must accept as true all of the
5  factual allegations contained in the complaint," construe those allegations in the light most
6  favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus,
7  551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,
8  960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th
9  Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of
10 factual allegations, or allegations that contradict matters properly subject to judicial notice. See
11 Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State
12 Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001). t
13     Pro se pleadings are held to a less stringent standard than those drafted by lawyers.
14 Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may
15 only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support
16 of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir.
17 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential
18 elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d
19 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se
20 litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend,
21 unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809
22 F.2d 1446, 1448 (9th Cir. 1987).

### III. Analysis

24     Each of plaintiff's claims is brought pursuant to 42 U.S.C. § 1983, which creates liability
25 for any person who, "under color of" state law, subjects any person "to the deprivation of any
26 rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party
27 injured in an action at law." "To state a claim under 42 U.S.C. § 1983, the plaintiff must allege
28 two elements: (1) that a right secured by the Constitution or laws of the United States was

violated; and (2) that the alleged violation was committed by a person acting under color of state law." Campbell v. Washington Dep't of Soc. Servs., 671 F.3d 837, 842 n.5 (9th Cir. 2011).

### A. Unlawful Seizure (Fourth Amendment)

The Fourth Amendment's prohibition of unreasonable seizures protects against even a "brief detention short of traditional arrest" insofar as the brief detention is, indeed, unreasonable. United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975) (citing Davis v. Mississippi, 394 U.S. 721 (1969); Terry v. Ohio, 392 U.S. 1, 16-19 (1968)). Whether a given seizure is reasonable "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." Id. In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that an officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). A traffic stop is akin to a Terry stop, and a "seizure for a traffic violation justifies a police investigation of that violation." Rodriguez v. United States, 575 U.S. 348, 354 (2015). However, the traffic stop becomes unreasonable and violates the Fourth Amendment once the length of the stop is "exceeding the time needed to handle the matter for which the stop was made[.]" Id. at 350.

Defendants argue that plaintiff's unlawful seizure claim should be dismissed because they "cannot tell if Plaintiff was claiming that he was unlawfully seized under both incidents or just one of the incidents and which incident it would be" and because they cannot tell if plaintiff is claiming that he himself was improperly detained or if property was improperly seized. ECF No. 27-1 at 10. The court agrees.

Plaintiff alleges, as to both the March and June incidents, the defendant officers initiated a traffic stop without observing any traffic violation, and without reasonable suspicion or probable cause. ECF No. 26 at 3, 5. Plaintiff does not provide any details as to what the officers said to him, only stating that he was issued traffic citations that were "false." ECF No. 26 at 4. As to the March stop, plaintiff alleges he was handcuffed and therefore that incident appears to have ended in an arrest after plaintiff was observed reaching for his phone and did not roll down the back window as requested by the officer. Id. The June incident involved an unspecified traffic citation

and appears to have been a brief detention. Id. at 5.

Though the court generally accepts the facts alleged by plaintiff for the purposes of a 12(b)(6) motion, the court will accept as true conclusory legal allegations cast as factual allegations. Bell Atlantic Corp., 540 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Here, plaintiff acknowledges that some kind of traffic citation was issued but makes the conclusory assertion that it was a false charge, and that there was no probable cause for the defendant officers to believe a traffic violation occurred, but fails to provide any facts or context about the stop itself. Plaintiff has not pled facts to support a conclusion that the traffic stops were themselves unreasonable.

Additionally, it is not clear form the complaint that plaintiff's arrest was unreasonable because the facts alleged indicate that he did not follow the officers' instructions during the March stop and instead reached for his phone. This information, along with the lack of information regarding what the traffic stop was for, defeats an inference conclusion that the arrest was unreasonable under the circumstances. To state a claim for unlawful seizure, there must be some facts in the complaint that demonstrate that the seizure was actually unreasonable. There are no such facts in the Third Amended Complaint. Accordingly, the Third Amended Complaint does not state a claim for unlawful seizure and this claim should be dismissed.

B. Excessive Force (Fourth Amendment)

The Fourth Amendment requires law enforcement officers to limit the amount of force used to that which is objectively reasonable in light of the circumstances. Tennessee v. Garner, 471 U.S. 1, 7–8 (1985); Graham v. Connor, 490 U.S. 386, 396 (1989). Under this standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."

Graham, 490 U.S. at 397. Central to the "objective-reasonableness test is the clear principle that the force used to make an arrest must be balanced against the need for force: it is the need for force which is at the heart of the Graham factors." Velazquez v. City of Long Beach, 793 F.3d 1010, 1025 (9th Cir. 2015). To determine whether a particular use of force was unreasonable, a court is to consider: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." Williamson v. City of National City, 23 F.4th 1146, 1151 (9th Cir. 2022) (citing Graham, 490 U.S. at 397).

Here, plaintiff alleges that on March 24, 2022, he was pulled over by officers Magna and Chappel. ECF No. 26 at 3-4. Officer Magana attempted to open the locked back door and demanded the back windows be rolled down, at which point plaintiff responded by requesting a supervisor and reaching for his phone. Id. at 4. Officer Magan then reached into the vehicle, twisting plaintiff's arm, forcibly removing him, and applying excessively tight handcuffs that caused bruising, pain, and restricted circulation. Id. at 4. Plaintiff does not allege that any force was used in subsequent June traffic stop. Id. at 5. Defendants contend that the excessive force claim is too vague to determine whether the force used on March 24 was excessive, and that there is no allegation of any force on June 8, and so the excessive force claim should be dismissed. ECF No. 27-1 at 14. The court agrees.

The complaint does not allege that any force was used during the June stop, and so that incident plainly cannot support a claim of excessive force. The March stop, however, does allege a use of force. The question for the court, then, is whether under the circumstances alleged in the Third Amended Complaint, the use of force was objectively unreasonable. Est. of Strickland v. Nevada County, 69 F.4th 614, 623 (9th Cir. 2023), cert. denied, 144 S. Ct. 559 (2024). The court finds that the facts alleged do not demonstrate an unreasonable and therefore excessive use of force. Plaintiff's description of the events surrounding the March stop is sparse, but he does make clear that he did not comply with Officer Magana's order to roll down his window and instead reached for his cell phone. Although "[t]raffic violations generally will not support the

7

1  use of a significant level of force," the traffic violation here was compounded by plaintiff's
2  failure to respond to the officer's command and his decision to reach for an object. Bryan v.
3  MacPherson, 630 F.3d 805, 828 (9th Cir. 2010).

4  Even assuming the circumstances were only very slightly elevated from a traffic-
5  violation-only encounter, the level of force allegedly used was relatively slight. Plaintiff alleges
6  that the officer removed him from his vehicle, twisted his arm back, and applied "excessively
7  tight" handcuffs. There is no allegation of sustained injuries beyond wrist bruising, which might
8  indicate that the officer used force greater than that necessary to effect the cuffing. "Handcuffing
9  an arrestee is standard practice, everywhere." LaLonde v. County of Riverside, 204 F.3d 947,
10 964 (9th Cir. 2000) (Trott, J., concurring in part, dissenting in part). Although applying handcuffs
11 in an abusive manner can constitute excessive force, see Hansen v. Black, 885 F.2d 642, 643 (9th
12 Cir. 1989), the sole allegation here, that the handcuffs were "excessively tight" does not support a
13 conclusion that the handcuffs were applied in an abusive manner.

14 Plaintiff's allegation that his arm was twisted back as he was removed from the vehicle is
15 likewise insufficient to support an excessive force claim. The allegation that the officer "twisted
16 plaintiff's arm," without more, simply does not demonstrate an unreasonable use of force. Even
17 if the twisting caused pain, plaintiff's subjective experience of pain, without more, cannot
18 establish a constitutional violation because the deliberate infliction of pain does not necessarily
19 violate the Fourth Amendment. Forrester v. City of San Diego, 25 F.3d 804, 806–07 (9th Cir.
20 1994) (use of "pain compliance techniques" not unreasonable). Is not apparent from the facts
21 alleged – which are minimal, despite plaintiff having numerous opportunities to amend his
22 complaint – that the use of force was excessive under the circumstances. This claim should be
23 dismissed.

24     C. Qualified Immunity

25 Even if plaintiff's Fourth Amendment claim of excessive force stated a claim upon which
26 relief could be granted, defendant Officer Magana would be entitled to qualified immunity.
27 Government officials are immune "from liability for civil damages insofar as their conduct does
28 not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Ideally, qualified immunity is determined at the earliest possible stage in litigation to avoid unnecessary burden and expense. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

In Saucier v. Katz, the Supreme Court set forth a two-step inquiry for determining whether qualified immunity applies. 533 U.S. 194, 201 (2001) (overruled in part by Pearson, 555 U.S. 223). First, a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. Second, if the answer to the first inquiry is "yes," the court must ask whether the constitutional right was "clearly established." Id. This second inquiry is to be undertaken in the specific context of the case. Id. In Pearson v. Callahan, the Supreme Court removed any requirement that the Saucier test be applied in a rigid order, holding "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

"The plaintiff bears the burden of proof that the right allegedly violated was clearly established." Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation marks omitted). "To meet this standard the very action in question need not have previously been held unlawful." Id. (internal quotation marks omitted). This is especially the case in the context of alleged Fourth Amendment violations, where the constitutional standard of "reasonableness" requires a fact-specific inquiry. Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). The court must determine "whether a reasonable officer would have had fair notice that the action was unlawful[.]" Tarabochia, 766 F.3d at 1125 (internal quotation marks and brackets omitted). At its base, "[t]he qualified immunity doctrine rests on a balance between, on the one hand, society's interest in promoting public officials' observance of citizens' constitutional rights and, on the other, society's interest in assuring that public officials carry out their duties and thereby

advance the public good." Beier v. City of Lewiston, 354 F.3d 1058, 1071 (9th Cir. 2004).

The conduct plaintiff describes, "reaching into the vehicle, twisting Plaintiff's arm, forcibly removing him, and applying excessively tight handcuffs that caused bruising, pain, and restricted circulation" (ECF No. 26 at 4) is not plainly unlawful. Indeed, the Ninth Circuit has held that force was reasonable where officers administered physical pressure to arrestees' limbs resulting in pain, but there were no physical blows, cuts, or weapons utilized. Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994). Plaintiff does not identify any precedent indicating that the defendant officer should have known that the degree of force he used was unreasonable, and the court is aware of none. Plaintiff describes what appears to be a fairly typical arrest. Accordingly, the excessive force claim fails for the additional reason that Officer Magana, the only defendant alleged to have used any force, is entitled to qualified immunity.

D. Retaliation (First Amendment)

"To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." Capp v. County of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016)). The plaintiff must show "a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury[.]" Hartman v. Moore, 547 U.S. 250, 259 (2006).

The facts alleged by plaintiff do not support a First Amendment claim. Plaintiff alleges that reaching for his phone to record the police interaction while he was pulled over during a traffic stop is a "protected activity under the First Amendment" and that Officer Magana subsequently removed him from his vehicle and arrested him. ECF No. 26 at 4. First, plaintiff's retaliation claim fails because he does not allege that he was actually recording, or that Officer Magana knew he was planning to record and began the arrest process because of plaintiff's intent to exercise a first amendment right; plaintiff only alleges that he reached for his phone. He has accordingly failed to establish that he was exercising a First Amendment right, and he has also

failed to establish a causal connection between the exercise of a First Amendment right and the officers' conduct.

Further, even if plaintiff had alleged that he was recording and that the officers knew he was recording, there is no established First Amendment right for a person detained during a traffic stop to record the interaction. Federal law has long been clear that there is a First Amendment right to photograph and record "matters of public interest," including interactions with police officers in public spaces. Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995); Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1044 (9th Cir. 2018); see also, Reed v. Lieurance, 863 F.3d 1196, 1211 (9th Cir. 2017) (referencing "the First Amendment-protected activity of observing a government operation" and citing Fordyce as "recognizing a 'First Amendment right to film matters of public interest' – in that case, police actions during a public demonstration" (quoting Fordyce, 55 F.3d at 439)). However, the established law regarding the right to record police interactions does not directly address the right of an individual to record *while detained*.

The Constitution permits reasonable time, place and manner restrictions on otherwise protected First Amendment activity. See Askins, 899 F.3d at 1044; see also Glick, 655 F.3d at 85 (the right to record police activity is "not unqualified"). In Kelly v. Borough of Carlisle, the Third Circuit found that there is not a clearly established right for a person to videotape police while they are pulled over on a traffic stop, because traffic stops have been characterized as an "inherently dangerous situation." 622 F.3d 248, 262 (3rd Cir. 2010). The Kelly court noted that the right to videotape police "is subject to reasonable time, place, and manner restrictions, as long as they are 'justified without reference to the content of the regulated speech, ... are narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). This familiar First Amendment rule appears to permit the restriction at issue here, and plaintiff puts forth no contrary authority. Accordingly, the cause of action should be dismissed.

////

E. Equal Protection (Fourteenth Amendment)

To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977). A plaintiff must show the discriminatory purpose was a "motivating factor" for the challenged action. Id. at 265–66. A plaintiff must show the challenged action was taken "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279, (1979).

Here, plaintiff does not allege in his statement of facts that the defendant officers made any comment whatsoever about plaintiff's race. Plaintiff alleges that at the "conclusion of the stop" in June, Officer Chappel, presumably referring to another vehicle or pedestrians, remarked "I know those guys – let's get those guys too." ECF No. 26 at 5. Plaintiff alleges this comment reflects "racial bias and an intent to target African American individuals." ECF No. 26 at 5. The court finds no clear connection between the alleged comment and an intent to target African American individuals. Moreover, even if the comment had been an obviously racist one, the Third Amended Complaint is clear that the comment was not directed at plaintiff or related to the interaction between plaintiff and the defendant Officers. Id. Plaintiff simply overheard it.

Under the heading of this cause of action, plaintiff's entire claim reads "Plaintiff was treated differently based on his race. Officers made discriminatory remarks and selectively enforced the law against him." Id. at 7. The facts alleged do not identify any discriminatory remarks based on plaintiff's race (indeed, they do not even identify what plaintiff's race is). The complaint is simply devoid of information that could support an equal protection claim. Accordingly, this claim should be dismissed.

F. Due Process (Fourteenth Amendment)

"[T]here is a clearly established constitutional due process right not to be subjected to

criminal charges on the basis of false evidence that was deliberately fabricated by the government." Devereaux v. Abbey, 263 F.3d 1070, 1074–75 (9th Cir. 2001). "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017). To support a deliberate fabrication-of-evidence claim, a plaintiff: must, "at a *minimum*, point to evidence that supports at least one of the following two propositions: (1) defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." Devereaux, 263 F.3d at 1076 (emphasis original).

Plaintiff alleges the defendant officers "issued knowingly false citations to justify illegal stops and detentions, depriving plaintiff of liberty without due process." ECF No. 26 at 7. The Third Amended Complaint does not say what the citations were for or identify any specific statements that were allegedly false. Again, though the court generally accepts the facts alleged by plaintiff for the purposes of a 12(b)(6) motion, the court will accept as true conclusory legal allegations cast as factual allegations. Bell Atlantic Corp., 540 U.S. at 555. Plaintiff has not provided any factual allegations to support this claim, and accordingly, it should be dismissed.

### G. Monell Liability

Municipal entities cannot be held vicariously liable under § 1983 for the actions of its employees. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. A municipality may also face liability under Monell for failure to properly train its officers where a plaintiff pleads facts showing (1) that he was deprived of a constitutional right; (2) that the municipality had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact; and (3) that

plaintiff's constitutional injury would have been avoided had the municipality properly trained those officers. Young v. City of Visalia, 687 F. Supp. 2d 1141, 1148 (E.D. Cal. 2009).

Plaintiff alleges that the City of Stockton "maintained policies, customs, and practices that permitted constitutional violations to occur and failed to properly train and supervise officers." ECF No. 26 at 89. Plaintiff does not identify any particular policies, but alleges that the unconstitutional acts of defendant officers Magana and Chappel were carried out pursuant to City policies. Id. The Third Amended Complaint makes no factual allegations about the City's policies or training programs. There is no statement in plaintiff's factual allegations that the City of Stockton police department "disregarded the known or obvious consequence that a particular omission in their training program would cause employees to violate citizen's constitutional rights." Connick v. Thompson, 563 U.S. 51, 61 (2011). The Third Amended Complaint does not identify any specific deficiencies of in training or supervision, or the circumstances making those deficiencies and their likely consequences obvious. Accordingly, plaintiff fails to state a Monell claim, and this claim should be dismissed.

### III. Further Leave to Amend Is Not Appropriate

The undersigned concludes that defendants' motion to dismiss should be granted in its entirety, and that plaintiff should not be given a further opportunity to amend. Federal Rule of Civil Procedure Rule 15(a) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe v. N. Cal. Collection Serv., 911 F.2d 242, 247 (9th Cir. 1990). "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in granting subsequent opportunities to amend is particularly broad." Chodos v. W. Publ'g Co., 292 F.3d 992, 1003 (9th Cir. 2002) (internal quotation marks omitted).

Here, plaintiff has already had multiple opportunities to amend his complaint to address the pleading deficiencies identified by this court and by defendants. Although plaintiff made some improvements with each iteration, the Third Amended Complaint still falls short of stating

any claim that can withstand a motion to dismiss. Further, plaintiff's response to the motion to dismiss (ECF No. 29), which he has specifically clarified is intended to serve as his opposition (ECF No. 32), is nonresponsive to the substance of the motion to such an extent that the undersigned is convinced that plaintiff will not be able to file a successful Fourth Amended Complaint if given the opportunity. Because the court has previously given plaintiff multiple opportunities to amend, the court should exercise its discretion to deny further leave to amend.

### IV. Pro Se Plaintiff's Summary

The Magistrate Judge is recommending that defendants' motion to dismiss (ECF No. 27) be granted and that your case be dismissed without another chance to amend the complaint. Third Amended Complaint does not demonstrate that what the defendants did, even if it felt unfair, rises to the level of constitutional violations. Because you have already tried to fix the problems with your complaint multiple times, it is being recommended that you not have another chance to amend your complaint. You may object to these recommendations within 21 days. The District Judge will make the final decision.

### V. Conclusion

Accordingly, the undersigned recommends that defendants' motion to dismiss at ECF 27 be GRANTED, and that the Third Amended Complaint be dismissed without leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: December 29, 2025

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE